UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA
CIVIL DIVISION

| | |
|---|---|
| DARREN NAGLE<br>13 Keller Road<br>Cochranville, PA 19330<br><br>    Plaintiff,<br>v.<br><br>UR M. JADDOU, Director<br>U.S. Citizenship and Immigration Services<br>c/o Office of Legal Counsel,<br>5900 Capital Gateway Drive,<br>Mail Stop 2120,<br>Camp Springs, MD 20588-0009<br><br>U.S. CITIZENSHIP AND IMMIGRATION SERVICES,<br>c/o Office of Legal Counsel,<br>5900 Capital Gateway Drive,<br>Mail Stop 2120,<br>Camp Spring, MD 20588-0009<br><br>DAVID ROARK, Director,<br>USCIS Texas Service Center<br>6046 N. Belt Line Road, Suite 172<br>Irving, TX 75038-0015<br><br>    Defendants. | COMPLAINT FOR DECLARATORY, INJUNCTIVE AND EQUITABLE RELIEF PURSUANT TO THE ADMINISTRATIVE PROCEDURE ACT,<br>5 U.S.C. § 701, *et seq.*<br><br>Case No.:<br><br>Judge: |

**COMPLAINT**

1. Plaintiff, Darren Nagle, a citizen and national of Ireland and a championship jockey and steeplechase specialist, sought employment-based immigration benefits from the United States Citizenship and Immigration Services ("USCIS") in accordance with the Immigration and Nationality Act § 203(b)(1)(A). Specifically, he sought EB-1 classification as an immigrant "with extraordinary ability," defined as a level of expertise

1

indicating that the individual is one of the small percentage who have risen to the very top of the field of endeavor." See INA § 203(b)(1)(A), see also, 8 C.F.R. 204.5(h).

2. On September 8, 2020, Plaintiff filed form I-140 with USCIS (Receipted as number SRC2090474729) and supported his petition with applicable evidence of his racing activities, awards, notoriety from published materials about him and salary and winnings information.

3. On February 3, 2021, USCIS requested additional evidence in support of the application and outlined the original petition's deficiencies. Despite this request, complicated by COVID-19 and the failure of general office protocols within the law firm, Plaintiff submitted no additional evidence. Despite this oversight, the case was approvable as filed based on the more than 390 pages submitted in support of the original petition.

4. Indeed, Plaintiff met the preponderance of the evidence standard that he was more likely than not fully qualified for the benefit sought, *See Matter of E-M-*, 20 I & N Dec. 77 (Comm 1989). Plaintiff presented evidence of his receipt of lesser nationally or internationally recognized prizes or awards for excellence in his field of endeavor; published material about himself in professional or major trade publications or other major media; and, evidence he received a high salary, or other his remuneration for services, in relation to others in the field.

5. On July 16, 2021, Defendant USCIS formally denied Plaintiff's EB-1 Petition alleging that, pursuant to 8 C.F.R. § 103.2(b)(13)(i) failure to respond to a Request for Evidence, "the benefit request may be summarily denied as abandoned, denied based on the record, or denied for both reasons." Without drafting a substantive decision, Defendant USCIS asserted simply that "after a careful review and analysis of all evidence within the record,

USCIS finds that the petitioner has not established eligibility for the benefit sought." *See* Exhibit A. Defendant USCIS offered no further analysis of the originally submitted evidence.

6. Based on the July 16, 2021 Decision, Defendant USCIS did not deny Plaintiff's petition based on abandonment; rather, USCIS held that Plaintiff has not established eligibility for EB-1 classification. Based on the Administrative Record in this matter, Defendant USCIS has failed to provide a basis for their decision, and the conclusory decision failed to outline any evidentiary deficiency or substantive legal conclusion.

7. Plaintiff now seeks to compel Defendants to reopen and reissue a decision on Plaintiff's original EB-1 petition based on a reasonable adjudication of the applicable and reliable evidence submitted in support of the petition.

8. Indeed, the original evidence submitted as part of Plaintiff's application for immigration benefits is consistent with the evidence outlined in Defendant USCIS's subsequent September 12, 2023, Policy Alert, which provided guidance for those seeking EB-1 classification and outlining probative evidence that USCIS considers.[1]

9. In addition to the clear analytical omission, Defendant USCIS erred by failing to give proper weight to evidence in the record related to the statutory requirements, including Plaintiff's lesser nationally or internationally recognized prizes or awards, published materials about him and his high salary. *See*, 8 C.F.R. § 204.5(h)(3)(i), (iii) and (ix).

10. Defendant USCIS erred in the assessment of the evidence presented and erred in the application of the evidentiary standard used in the case. Defendant USCIS failed to apply the preponderance of the evidence standard, and in denying the Petition, Defendant

---

[1] "USCIS Clarifies Guidance for EB-1Eligibility Criteria," Sept. 12, 2023, available at: https://www.uscis.gov/newsroom/alerts/uscis-clarifies-guidance-for-eb-1-eligibility-criteria

USCIS effectively imposed a higher evidentiary standard requiring Plaintiff to meet a burden unsupported by the federal regulations.

11. Plaintiff Nagle now seek declaratory and injunctive relief before this Court based on the July 16, 2021 denial by Defendant USCIS of his Form I-140, Petition for Immigrant Worker. Plaintiff challenges the Decision as unsupported by the evidence presented and overall an insufficient presentation of any legal analysis.

12. Plaintiffs challenge Defendants' denial of the EB-1A classification as arbitrary and capricious and contrary to law and fact.

## JURISDICTION

13. This case arises under the *Immigration and Nationality Act* ("INA"), 8 U.S.C. § 1101 *et seq*. and the *Administrative Procedure Act* ("APA"), 5 U.S.C. § 701 *et seq*. The U.S. District Court for the Eastern District of Pennsylvania has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 as the issue relates to a federal question. This Court also has authority to grant declaratory relief under 28 U.S.C. §§ 2201, and injunctive relief under the APA.

14. The United States has waived its sovereign immunity as a judgment or decree may be entered against the United States under 5 U.S.C. § 702.

## VENUE

15. Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2)(A), because this is a civil action where a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated within the Eastern District of Pennsylvania. Indeed, Plaintiff physically resides in

Cochranville, Chester County, Pennsylvania, and jurisdiction vests within this geographic location.

## EXHAUSTION

16. The July 16, 2021 denial of Plaintiff's Form I-140, Petition for Alien Worker, constitutes a final agency action pursuant to the APA, 5 U.S.C. § 701, *et seq.* Neither the INA or implementing regulations at 8 C.F.R. § 103.3(a) require an administrative appeal of the denial.

## PARTIES

17. Plaintiff, Darren Nagle, a citizen and national of Ireland, is a celebrated jockey and steeplechase champion, who currently resides in Cochranville, Pennsylvania. He was named the National Steeplechase Association's "Champion of the Year" two years in a row—in 2017 and 2018. He won the title of "Champion Amateur Steeplechase Jockey in the USA" prior to embarking on his professional career. He has more than 100 first-place wins in the United States and he has netted more than $4.2 million in purse winnings, as well as being among the top five riders in the United States by number of wins in 2010, 2012, 2013, 2015, 2017 and 2018. He filed his I-140 Petition for Alien Worker, on September 8, 2020, seeking permanent immigration status in the United States based on his extraordinary ability. Plaintiff has been aggrieved by the erroneous decision of Defendants. Plaintiff has a net worth of less than USD $2 million as contemplated by the *Equal Access to Justice Act*, 28 U.S.C. § 2412.

18. Defendant U.S. Citizenship and Immigration Services is an entity within the Department of Homeland Security, 6 U.S.C. § 271, and is defined as an "agency" within the meaning of the APA, 5 U.S.C. § 551(1). Defendant USCIS is responsible for the adjudication of

immigration benefits, including EB-1 immigrant visa petitions, and it is the agency that denied the I-140 Petition for Alien Worker at issue in this matter.

19. Defendant Ur M. Jaddou, in her official capacity, is the current Director of USCIS. Defendant Jaddou oversees the adjudication of immigration benefits within the United States in her role as Director of USCIS. The Director has final responsibility for the review and ultimate denial of Plaintiff's I-140, Petition for Alien Worker.

20. Defendant David Roark, in his official capacity, is the current Director of USCIS's Texas Service Center. Defendant Roark manages the direct adjudication of immigration benefits at USCIS's Texas Service Center, and he was the party responsible for the denial of Plaintiff's I-140 Petition for Alien Worker.

## LAW AND ARGUMENT

21. The EB-1 category for "extraordinary ability," is an employment-based immigrant status which, if approved, leads to permanent immigration benefits for a beneficiary in the form of Lawful Permanent Resident status. In initiating this immigration process, an individual (or, employer) must first file and seek approval of a Form I-140, Petition for Immigrant Worker, through Defendant USCIS.

22. The Immigration and Nationality Act § 203(b)(1)(A) defines an "alien with extraordinary ability" as follows:

    i. The alien has extraordinary ability in the sciences, arts, education, business or athletics which has been demonstrated by sustained national or international acclaim and whose achievements have been recognized in the field through extensive documentation.
    ii. The alien seeks to enter the United States to continue work in the area of extraordinary ability; and,
    iii. The alien's entry into the United States will substantially benefit prospectively the United States. INA § 203(b)(1)(A).

23. Moreover, Title 8 C.F.R. § 204.5(h)(2) asserts "extraordinary ability" as "a level of expertise indicating that the individual is one of that small percentage who has risen to the very top of the field of endeavor." Defendant USCIS has generally recognized that Congress intended to see a very high standard of individuals seeking immigrant visas in the extraordinary ability classification.

24. Title 8 C.F.R. § 204.5(h)(3) provides two separate avenues for obtaining classification as an immigrant of extraordinary ability. First, an applicant may demonstrate extraordinary ability by establishing sustained national or international acclaim by presenting evidence of a one-time achievement.

25. Alternatively, the regulations outline ten criteria, *at least three of which must be satisfied,* for an individual to establish the sustained acclaim necessary to qualify as an individual of extraordinary ability. 8 C.F.R. § 204.5(h)(3) *(emphasis added)*. The ten established criteria are as follow:

    (i) Documentation of the alien's receipt of lesser nationally or internationally recognized prizes or awards for excellence in the field of endeavor;
    (ii) Documentation of the alien's membership in associations in the field for which classification is sought, which require outstanding achievements of their members, as judged by recognized national or international experts in their disciplines or fields;
    (iii) Published material about the alien in professional or major trade publications or other major media, relating to the alien's work in the field for which classification is sought. Such evidence shall include the title, date, and author of the material, and any necessary translation;
    (iv) Evidence of the alien's participation, either individually or on a panel, as a judge of the work of others in the same or an allied field of specification for which classification is sought;
    (v) Evidence of the alien's original scientific, scholarly, artistic, athletic, or business-related contributions of major significance in the field;

    (vi)    Evidence of the alien's authorship of scholarly articles in the field, in professional or major trade publications or other major media;
    (vii)    Evidence of the display of the alien's work in the field at artistic exhibitions or showcases;
    (viii)    Evidence that the alien has performed in a leading or critical role for organizations or establishments that have a distinguished reputation;
    (ix)    Evidence that the alien has commanded a high salary or other significantly high remuneration for services, in relation to others in the field; or,
    (x)    Evidence of commercial successes in the performing arts, as shown by box office receipts or record, cassette, compact disk, or video sales. 8 C.F.R. § 204.5(h)(3)(i)-(x)

26. Extraordinary ability petitioners bear the burden of proof in immigration proceedings. The relevant standard to obtain such a visa classification is the "preponderance of the evidence." *See Matter of Chawathe*, 25 I& N Dec. 369 (AAO Oct. 20, 2010). As explained by Defendant USCIS, the "preponderance of the evidence standard" means that:

> [T]he petitioner or applicant must show that what he or she claims is more likely so than not so. This is a lower standard of proof than both the standard of "clear and convincing," and the standard "beyond a reasonable doubt" that typically applies to criminal cases. The petitioner or applicant does not need to remove all doubt from our adjudication. Even if an adjudicator has some doubt as to the truth, if the petitioner or applicant submits relevant, probative, and credible evidence that leads to the conclusion that the claim is 'more likely than not' or 'probably true,' the petitioner or applicant has satisfied the standard of proof. PM-602-0083.

The standard to meet is merely a preponderance of the evidence: not "conclusive" proof, not beyond a "reasonable doubt," simply "more likely than not." Put another way, the standard is 50% likelihood plus an infinitely small fraction. *Matter of Soo Hoo*, 11 I&N Dec. 151 (BIA 1965); *Matter of Patel*, 19 I&N Dec. 774 (BIA 1988); *Matter of Martinez*, 21 I&N Dec. 1035 (BIA 1997).

27. Petitioners accordingly must prove to USCIS that the intended immigrant beneficiaries demonstrate "extraordinary ability." Additionally, in some jurisdictions, a final merits determination is applied which requires a petitioner to "establish that the individual is one of the small percentage who have risen to the very top of the field of endeavor, and that the beneficiary has sustained national or international acclaim in the field." *Id.*

28. Defendant USCIS formally adopted the "final merits determination" from the Kazarian decision and transformed the extraordinary ability process into a two-step determination beyond what Congress intended in the regulatory code. *See USCIS, Policy Memorandum 602-0005.1, Evaluation of Evidence Submitted with Certain Form I-140 Petitions*, Revisions to the Adjudicator's Field Manual (AFM) Chapter 22.2., AFM Update AD11-4 (2010). While Defendant USCIS' stated objective was to provide "greater consistency in decision on petitions for aliens with extraordinary ability," the policy effectively raised the evidentiary standard and created an additional requirement not previously contemplated by Congress. It is unclear in the present case whether this heightened standard of proof and ultra vires policy was applied because there was no substantive decision issued by Defendant USCIS.

29. The dispute in question allows Plaintiff to seek costs and fees associated with filing and litigating this matter pursuant to 28 U.S.C. § 2412(b), *et seq.* Federal law allows aggrieved parties to seek "reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action." *Id.*

**FACTS**

30. On September 8, 2020, Plaintiff sought EB-1A First-Preference Immigrant Status, as a self-petitioner, so that he could remain permanently in the United States. Plaintiff submitted Form I-140 and all applicable evidence related to his career awards, earnings and notoriety. Plaintiff intended to further advance his demonstrably remarkable career on a permanent basis in the United States as a steeplechase jockey in the greater Philadelphia area.

31. Plaintiff was already in the United States in O-1B immigration status, and lawfully employed as a steeplechase jockey, primarily competing in circuits organized by the National Steeplechase Association, the most prominent professional steeplechase organization in the United States. Having raced in thousands of events, earned multiple awards, including "Champion of the Year" and earned prize winnings upwards of $4.2 million dollars, Plaintiff sought classification as an immigrant of extraordinary ability.

32. On or about February 3, 2021, Defendant USCIS issued a Request for Evidence ("RFE") seeking additional evidence to demonstrate at least three of the criteria under 8 C.F.R. 204.5(h)(3) which of which were previously addressed in the original submission with substantial evidence.

33. On July 16, 2021, Defendant USCIS denied Plaintiff's I-140 Petition. *See* Exhibit A.

34. In the denial, Defendant USCIS failed to analyze the case based on the ten enumerated criteria outlined in the regulations and simply concluded that Plaintiff was not qualified for the immigration benefit under 8 C.F.R. § 204.5(h)(3). *Id.*

35. Defendant USCIS provided no analysis or explanation for the denial. Defendant USCIS did not outline the evidence or offer any explanation as to why the evidence was deficient or that it failed to meet the criteria under 8 C.F.R. § 204.5(h)(3). Defendant USCIS

simply provided no analysis of the claim. In sum, Plaintiff was left with no understanding as to why the evidence presented did not fulfill the regulatory requirements for EB-1 classification.

36. A reasonable review of the evidence shows that Plaintiff fulfilled three of the necessary criteria as enumerated under 8 C.F.R. § 204.5(h)(3); namely, Plaintiff's receipt of lesser nationally or internationally recognized prizes or awards (8 C.F.R. § 204.5(h)(3)(i)), published materials about him in professional or major trade publications or other major media (8 C.F.R. § 204.5(h)(3)(iii)); and, his high salary, in relation to others in the field (8 C.F.R. § 204.5(h)(3)(ix)).

37. In relation to 8 C.F.R. § 204.5(h)(3)(i), Plaintiff demonstrated his eligibility for EB-1 classification based on "lesser nationally or internationally recognized prizes or awards." He was named the National Steeplechase Association's "Champion of the Year" in 2017 and 2018. The National Steeplechase Association is the premier, professional steeplechase organization in the United States. In 2010, 2011, and 2012, Plaintiff won the title of Champion Amateur Steeplechase Jockey in the USA for the National Steeplechase Association (NSA). After joining the professional circuit, his awards also include more than 100 first-place wins in the United States, which have resulted in more than $4.2 million in purse winnings, as well as being the among the top five riders in the United States by number of wins in 2010, 2012, 2013, 2015, 2017, and 2018. Additionally, in 2018, Plaintiff was awarded the champion "Leading Timber Jockey" title by winning the most races numerically during the season. Evidence of these accomplishments was presented in the original September 2020 filing with Defendant USCIS.

38. In relation to 8 C.F.R. § 204.5(h)(3)(iii), Plaintiff's accomplishments have appeared in a variety of professional or major trade publications and specifically reference his work in the field of steeplechase jockying. Plaintiff's winning campaigns have been published in some of the most prestigious horse racing media in the world, including: *The Irish Field* – Ireland's foremost equine publication with more than 50,000 weekly readers and subscribers from 54 countries; *The Baltimore Sun* – The largest daily newspaper in Maryland with a weekly integrated audience of more than 736,000 readers; *The New York Daily News* – Pulitzer Prize winning publication and one of New York's most iconic media brands, with more than 19 million monthly unique visitors and 3.8 million monthly print readers; and, *The Corkman* – A weekly Irish newspaper with a robust Irish readership. Evidence of these publications was presented in the original September 2020 filing with Defendant USCIS.

39. In relation to 8 C.F.R. § 204.5(h)(3)(ix), Plaintiff demonstrated that his salary significantly high as related to others in his field.  His overall purse winnings as a jockey netted $4.2 million over the course of his career, and he was awarded a portion of earnings from each win. Indeed, from 2009-2018, Plaintiff ranked in the National Steeplechase Association's top 10 jockeys for races won and money earned: 2009 - $200,060 - 9th overall highest winnings;  2010 - $340,020 - 4th overall highest winnings; 2011 - $314,845 - 4th overall highest winnings;  2012 - $391,775 – 4th overall highest winnings; 2013 - $504,710 – 2nd overall highest winnings; 2014 - $228,450 – 6th overall highest winnings;  2015 - $390,850 – 6th overall highest winnings;  2016 - $257,500 – 9th overall highest winnings; 2017 - $636,050 – 2nd overall highest winnings; and, 2018 - $547,350 – 3rd overall highest winnings. Evidence of these earnings, and the earnings in

relation to others in the field, was presented in the original September 2020 filing with Defendant USCIS.

40. Defendant USCIS did not assess any of this evidence in its final decision; instead choosing to simply state that "after a careful review and analysis of all evidence within the record, USCIS finds that the petitioner has not established eligibility for the benefit sought." *See* Exhibit A.

41. Defendant USCIS did not carefully review the evidence, and has provided no analysis that it did so, in rendering its erroneous decision in relation to Plaintiff's eligibility for EB-1 classification.

42. Interestingly, on September 12, 2023, USCIS issued a policy change by updating and adding to the EB-1 classification sections of the USCIS Policy Manual. The changes included adding examples of evidence that would be sufficient to demonstrate *prima facie* eligibility for the visa EB-1 classification and additional information about the analysis required by USCIS employees when evaluating a case. These updates to the USCIS Policy Manual demonstrate that Plaintiff's original EB-1 petition was approvable based on the evidence presented in the initial filing and further show that he presented the very evidence the agency requires adjudicators to consider.

43. Under 5 U.S.C. § 702 and § 704, Plaintiffs have been aggrieved by an agency decision for which there is no exhaustion requirement and no additional remedy. As such, Plaintiffs now bring this litigation seeking declaratory and injunctive relief to overturn the July 16, 2021 decision of USCIS as being arbitrary and capricious and against the weight of evidence.

## RELIEF

### Violation of the Administrative Procedure Act 5 U.S.C. § 701, *et seq*

44. Plaintiffs re-allege and incorporate by reference, as if fully restated, the facts and allegations in all preceding paragraphs.

45. Defendant USCIS erred in the application of law and fact in making their determination regarding Plaintiff's I-140 Petition.

46. Defendant USCIS erred on the application of 8 C.F.R. § 204.5(h)(3)(i) because Plaintiff proved, by a preponderance of the evidence, that he was the recipient of lesser nationally or internationally recognized prizes or awards for excellence in the field of endeavor, specifically, the National Steeplechase Association's "Champion of the Year" in 2017 and 2018, "Leading Timber Jockey" for winning the most races numerically in 2018, and his award from the National Steeplechase Association's "Champion Amateur Steeplechase Jocky" in 2010, 2011 and 2012.

47. Defendant USCIS erred on the application of 8 C.F.R. § 204.5(h)(3)(iii) because Plaintiff proved, by a preponderance of the evidence, that Plaintiff's biography and accomplishments appears in a number of prestigious newspapers, including *The Irish Field*, the *Baltimore Sun*, the *New York Daily News*, and the *Corkman*.

48. Defendant USCIS erred in the application of 8 C.F.R. § 204.5(h)(3)(ix) because Plaintiff proved, by a preponderance of the evidence, that he "command[s] a high salary or other significantly high remuneration for services" and that his $4.2 million in purse winnings from 2009-2018 are higher than his colleagues. Indeed, in that same period, he never ranked outside the top-10 earners for steeplechase jockeys.

49. Defendant USCIS erred by failing to complete an analysis of the evidence and assess the eligibility based on that evidence. Instead, Defendant USCIS simply found that "after a

careful review and analysis of all evidence within the record, USCIS finds that the petitioner has not established eligibility for the benefit sought." *See* Exhibit A.

50. Under 5 U.S.C. § 702 and § 704, Plaintiff has been aggrieved by an agency decision for which there is no additional remedy.  As such, Plaintiff now seeks declaratory and injunctive relief to overturn the prior decision of a United States agency as being arbitrary and capricious and against the weight of evidence.

51. Furthermore, Defendant USCIS failed to draft a decision in this matter that accounted for the evidence presented. Defendant USCIS provided no analysis of the claim or basis for the denial based on the evidence in the record.

52. Plaintiff seeks review by this Court pursuant to 5 U.S.C. §§ 701-706. 53, and it maintains that the decision by USCIS to deny Plaintiff's I-140 Petition is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

53. Plaintiff requests that Defendant USCIS's finding and conclusion to deny the I-140 Petition be set aside pursuant to 5 U.S.C. § 706(2)(A).

54. Defendants have acted arbitrarily and capriciously by failing to review the evidence and failing to find, in consideration of Plaintiff's expertise and extraordinary ability in steeplechase, that the I-140 Petition is supported by proper evidence.

**WHEREFORE**, Plaintiff requests the following relief from the U.S. District Court for the Eastern District of Pennsylvania:

A. Declaratory Judgement finding that the July 16, 2021, denial of Plaintiff's I-140 Petition was arbitrary and capricious and in violation of the APA under 5 U.S.C. § 706(2)(A);

B. Declaratory Judgment vacating the denial of the EB-1A Form I-140 Petition and remand the Petition to Defendants with instructions to approve the Form I-140 and formally find the evidence submitted demonstrates Plaintiff's extraordinary ability;

C. Award Plaintiff costs of this action pursuant to 28 U.S.C. § 2412(b), *et seq.*; and,

D. Grant Plaintiff any and all other relief this court deems equitable and just.

    Respectfully submitted for the Plaintiff,

/S/ STEPHEN ANTWINE
Stephen Antwine, Esq.
PA Supreme Court 309379
Green & Spiegel, LLC
1524 Delancey Street, Suite 4
Philadelphia, Pennsylvania 19101
(215) 395-8959
santwine@gands-us.com